UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CUDD PUMPING SERVICES, INC. | CIVIL ACTION NO. 11-cv-1913 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| COASTAL CHEMICAL CO., LLC et al | MAGISTRATE JUDGE MARK HORNSBY |

### ORDER

Before the Court are the following two motions, both filed by Defendant Coastal Chemical Co., L.L.C. ("Coastal"): Motion in Limine Regarding Issue of Causation [Record Document 37] and Motion in Limine Regarding Thermal Imaging Measurements [Record Document 38]. Each motion seeks to exclude the testimony of mechanical engineering expert Paul L. Carper ("Carper"), as his testimony relates to each of the described areas. Plaintiff Cudd Pumping Services, Inc. ("Cudd") filed responses [Record Documents 66, 83,[1] and 65], and Coastal likewise filed replies [Record Documents 72 and 73]. For the following reasons, both motions are hereby **DENIED**.

As to the Motion in Limine Regarding the Issue of Causation [Record Document 37], Coastal seeks to exclude Carper's testimony "because Carper has admitted that he is not a certified fire inspector, he did not conduct an investigation regarding the cause

---

[1] Record Document 83 is Cudd's Supplemental Response to Coastal's Motion in Limine Regarding the Issue of Causation [Record Document 37], which was filed for the sole purpose of correcting confusion caused by a very poorly worded section of Cudd's initial response. As Coastal seized upon and Cudd has admitted, the section at issue regarding Coastal's equipment was extremely misleading. However, it is obvious, based on the entire record in this case, that Cudd did not intend to make a general admission that the fire was not caused by fuel leaking from Coastal's equipment. Indeed, the contrary position is undisputably the crux of Cudd's case.

of the April 15, 2011 fire, he does not know the cause of the fire, and he otherwise has no opinion on the issue of causation."[2] Cudd responds by explaining that Carper was hired to provide support to Cudd's fire expert, Tommy Sing, in determining what potential combustible fluids were capable of spraying, or likely to spray on, the top of the engine.[3] Cudd states that Sing and Carper were "involved in two different but complementary disciplines[,]" such that "[t]he analysis of both experts is important to determine the ultimate cause of the fire."[4] Based on Carper's education, experience, and investigation in this matter, Cudd argues that he should be allowed to testify that, from a mechanical engineering standpoint, it was more likely than not that the source of combustible fluid was diesel from a Coastal hose.[5]

As to the Motion in Limine Regarding Thermal Imaging Measurements [record Document 38], Coastal seeks to exclude Carper's testimony because the measurements at issue "are unreliable as Carper failed to account for a variety of factors necessary to make the recreation 'substantially similar' to that of the frac pump engine at the time of the fire."[6] In that same motion, Coastal further seeks to exclude any testimony concerning the experimental auto-ignition temperatures ("AIT") relied on by plaintiff's experts because they are not accurate predictors of the temperatures at which fluids

---

[2] Record Document 37, p. 3.

[3] Record Document 66, p. 1.

[4] *Id.* at p. 4.

[5] *Id.* at p. 1.

[6] Record Document 38, p. 1.

may ignite on a hot surface."[7] Cudd responds by clarifying that its experts were not attempting to recreate the fire or its ignition. Instead, Cudd argues, the body of evidence relating to thermal imaging and AIT represents part of the scientific investigation of the fire at issue and necessary steps in determining the cause thereof. To that end, Coastal urges that Cudd's attempted recreation of the engine temperatures of pump A2 cannot meet the standards of admissibility and ignores its own expert's acknowledgment that there are a number of variables that can affect AIT.

At the outset, the Court acknowledges that, since the time of the filing of the instant motions, the Court has had the benefit of hearing oral argument in this case.[8] Although the specific motions set for hearing on July 10, 2014 involved other experts, including Tommy Sing, the Court did indeed hear from Paul Carper and several other experts from both sides. Upon due consideration of the testimony received at that hearing, the arguments of both parties made at the hearing, as well as the specific arguments of both parties submitted in the briefs now before the Court, the instant motions are hereby **DENIED** [Record Documents 37 and 38]. As acknowledged by the Court during the July hearing, "the existence of facts which are contrary, the existence of hypotheses which were not considered [by a particular expert]" are all areas for which the appropriate method of attack is vigorous cross-examination.[9] Nothing in the

---

[7] *Id.*

[8] *See* Record Documents 107 (order granting limited oral argument), 110 (minutes from motion hearing held July 10, 2014), and 122 (official transcript of hearing held on July 10, 2014).

[9] Record Document 122, p. 232 (In reference to its ruling on the admissibility of Tommy Sing's testimony, the Court stated: "All of those things that I mentioned -- the existence of facts which are contrary, the existence of hypotheses which were not considered -- are all facts which can be brought out on cross-examination, in the crucible of cross-examination, and the Court finds no reason to exclude

Court's ruling today will limit Coastal in its ability to cross-examine Mr. Carper both on the tender and parameters of his expertise, as well as the substance of his testimony.

The Court is well aware that this is a factually complex case, in which both sides have retained several experts, all of whom have competing opinions to those of their counterparts retained by opposing counsel. As previously recognized by the Court, this is not an unusual scenario:

> [T]his is the type of controversy that you expect to see in a lawsuit between experts. It's expected that the experts on different sides are going to have different conclusions. And if we threw out expert testimony simply because another expert contradicted it, we would never have any expert testimony in cases, because of course there is, as I said, not only is there a dispute as to the facts in this case as to what actually happened that day, but there is a dispute as to what scientific factors should be looked at as well.[10]

As previously referenced,[11] in determining the admissibility of expert testimony, the Fifth Circuit has cautioned that a district court must defer to "the jury's role as the proper arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Id*. In a case such as this, where the parties present competing theories of the cause of the fire, it is the "function of the jury as the

---

Sing's testimony.").

[10] *Id*. at pp. 229-230.

[11] *See* Record Document 124.

traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Garrett v. Blanton*, Civ. A. Nos. 89–4367, Civ. A. 90–0319 thru Civ. A. 90–0323, 1992 WL 321588, at *3 (E.D. La. Oct. 26, 1992)(quoting *Lloyd v. Georgia Gulf Corp.*, 961 F.2d 1190, 1196 (5th Cir. 1992)).

**THUS DONE AND SIGNED** in Shreveport, Louisiana this 22nd day of September, 2014.

_____
Elizabeth Erny Foote
United States District Judge